16-1380
Hechavarria v. Sessions

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Submitted: February 1, 2018          Decided: May 16, 2018)

Docket No. 16-1380

_____

JOSEPH EMANUEL HECHAVARRIA,

*Petitioner-Appellant,*

v.

JEFFERSON B. SESSIONS III, ATTORNEY GENERAL OF
THE UNITED STATES, MICHAEL PHILIPS, FIELD DIRECTOR
FOR DEPARTMENT OF HOMELAND SECURITY IMMIGRATION AND
CUSTOMS ENFORCEMENT DETENTION AND REMOVAL, TODD TRYON,
FACILITY DIRECTOR, BUFFALO FEDERAL DETENTION FACILITY,

*Respondents-Appellees.*

_____

Before: POOLER, SACK, *Circuit Judges*, and ENGELMAYER, *District Judge*.[1]

---

[1] Judge Paul A. Engelmayer, United States District Court of the Southern District of New York, sitting by designation.

Appeal from United States District Court for the Western District of New York (John T. Curtin, *J.*) denying petitioner-appellant Joseph Emanuel Hechavarria's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Because Hechavarria is detained pending the resolution of his appeal to this Court, we determine that he is detained under 8 U.S.C. § 1226(c), rather than 8 U.S.C. § 1231. We therefore reverse the district court's determination that Hechavarria was detained pursuant to 8 U.S.C. § 1231. In light of the substantial uncertainty surrounding this area of detention after the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), we remand to the district court for reconsideration of the habeas petition under the correct statutory provision.

Reversed and remanded.

_____

JOSEPH EMANUEL HECHAVARRIA, Batavia, N.Y., *pro se*.

JESI J. CARLSON, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice (Chad A. Readler, Acting Assistant Attorney General, Civil Division, John W. Blakeley, Assistant Director, Office of Immigration Litigation, *on the brief*), Washington, D.C., *for Respondents-Appellees*.

VILIA B. HAYES, Hughes Hubbard & Reed LLP (Malik Havalic, Dustin P. Smith, *on the brief*), New York, N.Y., *Amicus Curiae*, in support of Petitioner-Appellant.

POOLER, *Circuit Judge*:

The Immigration and Nationality Act ("INA") provides for the detention of immigrants under various circumstances, two of which are at issue in this case. Immigrants who have been ordered removed are detained during their "removal period" under 8 U.S.C. § 1231(a). "Criminal aliens" are detained pursuant to 8 U.S.C. § 1226(c). In this appeal, we are asked to decide whether a "criminal alien" is detained under Section 1231(a) when he has exhausted his options for administrative review, even though he has a stay pending resolution of his appeal in this Court. We hold today that when a stay has been issued, an immigrant is not held pursuant to Section 1231(a) because he is not in the "removal period" contemplated by statute until his appeal is resolved by this Court. Accordingly, we reverse the district court's determination that Hechavarria was detained under Section 1231(a) and remand for reconsideration of his habeas petition under the correct statutory provision.

## BACKGROUND

**I.     Immigration and Criminal History**

Joseph Emanuel Hechavarria is a Jamaican citizen who first arrived in the United States in 1984 on a nonimmigrant visitor visa. Hechavarria overstayed his visa and married a U.S. citizen, who filed a marriage-based conditional permanent resident ("CPR") application on his behalf, which was granted in 1987. In 1989, Hechavarria's CPR status was terminated because he and his spouse failed to submit a petition to lift the conditions on his status as required by 8 U.S.C. § 1186a(c). In 2009, Hechavarria's son filed a Form I-130 petition on his behalf, which was granted by United States Citizen and Immigration Services ("USCIS") in 2010. Shortly thereafter, Hechavarria was served with a Notice to Appear and was charged with being removable from the United States under 8 U.S.C. § 1227(a)(1)(D)(i), the section of the immigration statutes that renders deportable individuals with terminated CPR status. Hechavarria was not detained at the time and instead was released to the Department of Homeland Security's ("DHS") Alternatives to Detention ("ATD") program.

In December 2010, Hechavarria failed to appear for a required check-in in Buffalo and instead called the ATD officers to tell them he was on his way to

Florida. Subsequent to this phone call, Immigration and Customs Enforcement (ICE) learned that Hechavarria was the subject of a criminal arrest warrant issued in Cheektowaga, New York on December 13, 2010 for, among other things, an alleged rape and assault that had occurred on December 2, 2010. Hechavarria was detained by ICE agents in New York City on December 22, 2010 and transported to Cheektowaga, New York to face the pending charges. In 2011, Hechavarria was convicted of assault in the second degree and sentenced to three years of incarceration and two years of post-release supervision.

While Hechavarria was incarcerated for the December 2010 assault, ICE filed an additional charge of deportability on the basis of Hechavarria's conviction of an aggravated felony under Immigration and Nationality Act ("INA") § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). On July 11, 2013, Hechavarria was released from criminal custody and immediately transferred to DHS custody at the Buffalo Federal Detention Facility in Batavia, New York, where he was ordered removed to Jamaica. Over the course of the next two years, Hechavarria filed two appeals as well as a motion to reopen proceedings.[2] The last of those

---

[2] In addition to the delays caused by administrative and judicial review, Hechavarria's removal was also postponed on the request of a representative from the Jamaican consulate. The consulate expressed concerns about

appeals was dismissed by the Board of Immigration Appeals ("BIA") on September 30, 2015.

**II.    Petition for Review and Habeas Corpus**

On October 16, 2015, Hechavarria filed a pro se petition for review of the BIA order dismissing his appeal, as well as a motion for stay of removal with this Court. *See Hechavarria v. Lynch*, No. 15-3331 (2d Cir. 2015), ECF No. 1. On December 15, 2016, we granted the stay of removal because we found that Hechavarria had "an arguable claim that the BIA erred in adhering to the aggravated felony crime of violence determination under the law of the case doctrine without assessing whether *Johnson v. United States*, 135 S.Ct. 2551 (2015), constituted intervening precedent." Order Staying Appeal, *Hechavarria v. Lynch*, No. 15-3331 (2d Cir. 2016), ECF No. 55. We recognized that the question of *Johnson*'s application to the same section of the INA providing grounds for Hechavarria's removal was currently under review by the Supreme Court in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S.Ct. 31 (U.S. Sept. 29, 2016), No. 15-1498. *Id*. Oral argument was heard in *Dimaya* on October 2, 2017, and the Supreme Court issued its opinion on February 27, 2018. *Sessions v.*

Hechavarria's ability to receive necessary medical care in Jamaica and requested that he be permitted more time to challenge his removal order.

6

*Dimaya*, 138 S. Ct. 1204 (2018). The parties are currently litigating the impact of *Dimaya* on Hechavarria's petition for review. Meanwhile, the stay of removal remains in place.

On December 8, 2015, while his stay request was pending, Hechavarria filed a pro se petition for a writ of habeas corpus in the Western District of New York. The district court analyzed Hechavarria's detention under 8 U.S.C. § 1231 and denied his habeas petition on April 11, 2016. The district court reasoned that "because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment." *Hechavarria v. Lynch*, No. 15-cv-1058 (W.D.N.Y. April 11, 2016), ECF No. 9 ("District Court Opinion") at 12. The district court alternatively found that the outcome would be the same via the analysis required by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Hechavarria could not demonstrate that "there [was] no significant likelihood of removal in the reasonably foreseeable future." District Court Opinion at 12 (quoting *Zadvydas*, 533 U.S. at 701).

On April 29, 2016, Hechavarria timely appealed the district court's denial of his petition for a writ of habeas corpus. On October 27, 2017, we appointed amicus curiae counsel to address whether Hechavarria's detention was governed by 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231(a). Order Appointing Amicus Curiae Counsel, *Hechavarria v. Sessions*, No. 16-1380 (2d Cir. 2017), ECF No. 76.

## DISCUSSION

Hechavarria challenges the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. We have jurisdiction to hear this case under 28 U.S.C. § 1291, the statute that vests the courts of appeals with jurisdiction to hear appeals from final decisions of the district courts. Because a petition for a writ of habeas corpus raises questions of law regarding the power of the state to detain an individual, we conduct a de novo review of the denial. *See Wang v. Ashcroft*, 320 F.3d 130, 139-40 (2d Cir. 2003); *see also INS v. St. Cyr*, 533 U.S. 289, 301, 314 (holding that courts retain habeas jurisdiction in immigration cases and observing that "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest").

8

Hechavarria and the government disagree about which provision of the INA governs Hechavarria's detention. Hechavarria and the court-appointed amicus counsel argue that Hechavarria's detention is governed by 8 U.S.C. § 1226(c) ("Section 1226"), the section of the INA that governs the detention of "criminal aliens." The government argues that Hechavarria is detained pursuant to 8 U.S.C. § 1231 ("Section 1231"), the section of the INA that addresses the "removal period" for immigrants facing deportation. We agree with Hechavarria and the amicus counsel that the plain language of the statute dictates that Hechavarria is detained pursuant to section 1226(c). We hold that section 1226(c) governs because he has obtained a stay of removal from this Court pending the disposition of his petition for review.

## I. Judicial Review

This Court is currently engaged in two threads of judicial review regarding Hechavarria. The first thread is the one at issue in the instant appeal, namely, the review of the district court's denial of his petition for a writ of habeas corpus. The second is the petition for review of the underlying removal order that was stayed before this Court pending the Supreme Court's decision in *Dimaya*. The two threads are interwoven in this case.

The INA explicitly provides for judicial review of removal orders in the federal courts of appeals. 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . ".). The INA also contemplates the need for stays of removal during the process of judicial review, observing that filing a petition for review does not stay the removal order, "unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). A stay of removal issued by this Court thus stops the removal to allow us to consider the legal challenge raised by the petitioner.

In addition to a formal stay of removal, the government also implements a forbearance policy in this Circuit during the pendency of petitions for review. *See In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). This discretionary policy dictates that "the filing of a motion to stay removal . . . will suffice to prevent removal" while a petition for review is pending. *Efstathiadis v. Holder*, 752 F.3d 591, 599 n. 5 (2d Cir. 2014). That forbearance is lifted—and the petitioner is eligible for removal—if we deny the motion for a stay of removal. If we grant the underlying petition,

of course, the petitioner is either granted the immigration status he or she is seeking, or (more typically) the case is remanded to the BIA for further proceedings consistent with our decision.

In sum, the INA explicitly provides for judicial review of both habeas petitions and underlying removal orders. It also provides for the ability of courts of appeals to issue stays of removal pending the disposition of that review process. Further, the government's forbearance policy stays a removal until we decide on the formal motion for a stay. The statutory and customary procedural protections of judicial review and stays are essential tools in meeting the government's constitutional obligation to provide procedural due process for immigrants facing removal. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Our power and obligation to participate meaningfully in the statutory scheme as structured by the Constitution is a foundational element of our analysis in this appeal.

**II.      Statutory Framework: 8 U.S.C. § 1231**

The government's power to detain an immigrant must be grounded in a specific provision of the INA. The question before us is precisely which provision

of the INA applies to the detention of Hechavarria. The government endorses the district court's view that he is detained under Section 1231. Amicus asserts he is detained pursuant to Section 1226. Because the court below applied Section 1231, we begin our analysis by examining this provision.

This Section of the INA addresses immigrants in the "removal period," the term used in the statute to describe the 90-day period following an order of removal during which "the Attorney General shall remove the alien." 8 U.S.C. § 1231(a)(1)(A). The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

8 U.S.C. § 1231(a)(1)(B).

The unambiguous language of the statute makes plain that Hechavarria cannot be detained pursuant to Section 1231. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning

of that language accurately expresses the legislative purpose."). There are three scenarios that can trigger the start of the removal period, but only the *latest* of those scenarios is the trigger. The second scenario is the one that applies to immigrants like Hechavarria who have filed petitions for review with a court of appeals and received a stay. However, in that scenario, the removal period is only triggered on "the date of the court's final order." We have not yet issued a final order. *Cf. Wang*, 320 F.3d at 147 (holding that the petitioner's due process claim under Section 1226 was "rendered moot" because the Court's decision on the petition for review effectively moved the petitioner into the removal period contemplated by Section 1231).

This reading of Section 1231 is confirmed by its structure and logic. The removal period—repeatedly described as a default 90-day period throughout the section—is the period of time during which the "Attorney General shall remove" the immigrant. 8 U.S.C. § 1231. Put simply, Section 1231 addresses the logistics of removal for immigrants who have been "ordered removed." *Id*. Generally speaking, Section 1231 assumes that the immigrant's removal is both imminent

and certain.[3] The definition of the removal period is dependent upon the assumption that no substantive impediments remain to the immigrant's removal.

The government attempts to skirt this clear statutory language by arguing that we need only determine when Hechavarria's order became administratively final. In other words, the government asks us to ignore section (ii)'s clear language "on the latest of the following," so that any immigrant with an administratively final order of removal is subject to detention under 8 U.S.C. § 1231. But this reading is untenable: any immigrant with a pending petition for review already has an administratively final order of removal, which would render section (ii) mere surplus. "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal quotation marks omitted); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) (collecting cases espousing the view that a court must "give effect, if possible, to every clause and word of a statute").

---

[3] Section 1231 also contemplates delays to removal (e.g., intentional delay on the part of the immigrant subject to removal, § 1231(a)(1)(C), or situations in which the government of the country of intended removal does not respond promptly to the Attorney General's inquiry regarding removal, § 1231(b)(2)(D)), but the contemplated delays are of a logistical nature, not a judicial one.

Nor do we need detain ourselves long on the government's argument that we ought to afford deference to its interpretation, pursuant to the principles articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). As amicus counsel notes, the government's interpretation on this point is a litigation position, not an agency interpretation.[4] But even if it were an agency interpretation, *Chevron* is simply inapposite. *Chevron* deference is appropriate only when the language is ambiguous and the intent of Congress unclear. *Id.* at 842-43. There is simply nothing ambiguous about the statute at issue. The removal period begins at the latest of three possible scenarios, one of which is when a court issues its final order after having issued a stay. We granted Hechavarria a stay and have not yet issued our final order regarding his petition for review. Thus, Hechavarria is not yet in a position that falls within 8 U.S.C. § 1231 and that statute does not apply.[5]

---

[4] Amicus counsel also observes that the government espoused a different view earlier in the litigation, when it argued that "a court-ordered stay prevents the removal period from commencing" in light of its previous reading of 8 U.S.C. § 1231(a)(1)(B)(ii). Memorandum of Law in Opposition to the Petition, *Hechavarria v. Lynch*, No. 15-1058 (W.D.N.Y. Feb. 29, 2016), ECF No. 7 at 15, n. 12.

[5] Because we find that Section 1231 is not the proper section under which to assess Hechavarria's claim, we do not need to address the district court's view that Hechavarria's decisions to pursue review of his removal order placed his prolonged detention outside the holding of *Zadvydas*. We note, however, that the Supreme Court has spoken in a hypothetical, related context only of an

Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review. To hold otherwise would ignore the clear language of the statute as well as its internal logic. When a court of appeals issues a stay pending judicial review of an underlying removal order, the removal is not inevitable. A contrary reading assumes that the courts of appeals function as mere ministerial rubber stamps for agencies. Yet this appears to be the view advanced by the government, which suggests that our review of Hechavarria's underlying removal order is a mere formality that simply "temporarily interrupted" "DHS's ability to carry out Hechavarria's removal." Appellees' Response to Amicus Br. at 2. Our responsibility to provide meaningful judicial review is one that is grounded in both the statute and the Constitution and may not be dismissed by the government as a mere procedural nuisance. Any interpretation to the contrary would render judicial review a meaningless symbolic exercise and has no basis in law.

---

immigrant who has "substantially prolonged his stay by abusing the processes provided to him," *Nken v. Holder*, 556 U.S. 418, 436 (2009)—not of an immigrant who simply made use of the statutorily permitted appeals process. *See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (observing that "appeals and petitions for relief are to be expected as a natural part of the process," and an immigrant may not be detained "merely because he seeks to explore avenues of relief that the law makes available to him").

**III. Statutory Framework: 8 U.S.C. § 1226**

We agree with Hechavarria and the amicus counsel that the controlling statute is 8 U.S.C. § 1226, which governs the "apprehension and detention of aliens." Specifically, the statute lists situations in which the "Attorney General shall take into custody" an alien who meets any of the listed criteria, including "any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Hechavarria was alleged to be deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), because of his conviction for a crime USCIS characterized as a "crime of violence" pursuant to 8 U.S.C. § 101(a)(43)(F).[6]

The government argues that Section 1226 governs only the detention of aliens before a removal order is issued. This reading is contradicted by the plain language of the statute itself. Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable. We observe that all other circuits to have considered this issue have arrived at the same

---

[6] On January 11, 2013, USCIS added this ground of deportability by filing a Form I-261. This ground of deportability is, of course, the reason we stayed Hechavarria's petition for review pending the Supreme Court's decision in *Dimaya*.

17

conclusion.[7] *See Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 270 (3d Cir. 2012) ("Our review indicates that every circuit to consider the issue has held that § 1226, not § 1231, governs detention during a stay of removal."); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057-58 (9th Cir. 2008) (holding that "the Attorney General's statutory authority to detain Prieto-Romero, whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a)"); *Bejjani v. INS*, 271 F.3d 670, 689 (6th Cir. 2001), (*abrogated in part on other grounds by Fernandez–Vargas v. Gonzales,* 548 U.S. 30 (2006)) (holding that Section 1231's "removal period" does "not begin until the date of the Court's final order"); *but see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002) (assuming without deciding that section 1231 applied to a petitioner with a stay of removal pending the outcome of his petition for review).

Because Hechavarria has been granted a stay of removal while his petition for review is pending, there remains a very clear impediment to his removal— review by this Court. Specifically, this Court must decide whether, given

---

[7] We also observe that several of these cases cited our decision in *Wang v. Ashcroft*, 320 F.3d 130 (2d Cir. 2003) as evidence that our Circuit had already decided this issue. Because our conclusion regarding this matter could be understood as dicta in that case, we write today to settle the matter.

intervening Supreme Court precedent, the BIA erred in finding that he is subject to removal on the basis of his conviction for an aggravated felony. Given the fact that such review has not been completed, it would make no sense to classify Hechavarria in the same section of the statute that governs the removal of aliens who have no remaining barriers preventing their immediate removal. Hechavarria's detention is thus governed by 8 U.S.C. § 1226(c) and the case law surrounding that section of the INA.

**IV.    Detention Under 8 U.S.C. § 1226(c)**

In *Lora v. Shanahan* we assessed the detention of aliens under 8 U.S.C. § 1226(c) and joined "every other circuit that has considered this issue, as well as the government, in concluding that in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation." 804 F.3d 601, 614 (2d Cir. 2015). Several of our sister circuits had determined that detentions under Section 1226(c) should be assessed through an individualized reasonableness inquiry. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 234-35 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003).[8] We

---

[8] Two additional circuits embraced this approach after *Lora* was decided. *See Sopo v. U.S. Att'y General*, 825 F.3d 1199, 1215 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 498-99 (1st Cir. 2016).

joined the Ninth Circuit, however, in embracing a "bright-line rule to cases of mandatory detention," *Lora*, 804 F.3d at 614, and held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention," *id*. at 616; *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1132-33 (9th Cir. 2013).

On February 27, 2018, the Supreme Court held that this interpretation of Section 1226(c) was erroneous, reversing the Ninth Circuit's bright-line rule. Specifically, the Court held in relevant part that "1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness protection purposes." *Jennings*, 138 S.Ct. at 847. The Court distinguished the statutes at issue in *Jennings* from its interpretation of a different statute in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court invoked the canon of constitutional avoidance in interpreting the ambiguous language of Section 1231's detainment provision. *Zadvydas*, 553 U.S. at 689. Specifically, the Court held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" and that there must therefore be a

20

reasonableness limit to the permissible length of detention. *Id*. at 690. The Court determined that six months was a "presumptively reasonable period of detention." *Id*. at 701.

The Supreme Court found this analysis inapplicable to the statutory provisions at issue in *Jennings*. The Court held that the canon of constitutional avoidance did not apply to Section 1226(c) and the other challenged statutes, because "the meaning of the relevant statutory provisions is clear." *Jennings*, 138 S. Ct. at 848. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id*. at 842 (internal quotation marks omitted). The Supreme Court therefore vacated the Ninth Circuit's decision on the basis of the erroneous application of the constitutional avoidance doctrine, but remanded the case for the Ninth Circuit "to consider respondents' constitutional arguments on their merits." *Id*. at 851.

Because our holding in *Lora* also relied upon the constitutional avoidance analysis of *Zadvydas*, *see Lora*, 804 F.3d at 606, the *Lora* decision was vacated by the Supreme Court shortly after *Jennings* was issued, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018). This Court did not have the opportunity to consider the issues raised

by the Supreme Court on the *Lora* remand, because during the pendency of the appeal the petitioner in *Lora* had received cancellation of removal and the case was therefore moot. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018).

In light of the substantial uncertainty surrounding the detention provisions in Section 1226(c) given the new legal landscape, we remand this case to the district court for consideration in the first instance of the appropriate remedy for Hechavarria in light of the Supreme Court's decision in *Jennings*.

## CONCLUSION

The plain language of the statutory scheme makes clear that Hechavarria is not in his "removal period" and cannot be detained pursuant to Section 1231. His detention is therefore governed by Section 1226. We thus REVERSE the judgment of the district court and REMAND this case to the district court for reconsideration of the habeas petition under the correct statutory provision.