**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0706n.06

Case No. 19-5230

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 17, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MONTRELL KILPATRICK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| HCA HUMAN RESOURCES, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | **O P I N I O N** |

**BEFORE: SUTTON, BUSH, and MURPHY, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** After his termination by HCA Human Resources, Montrell Kilpatrick filed suit in federal district court alleging claims of discrimination and hostile work environment based on race and sex, retaliation, tortious interference with contract and business relations, and intentional infliction of emotional distress. The district court granted summary judgment in HCA's favor. We vacate and remand in part and affirm in part.

I.

Kilpatrick worked for HCA Human Resources as a recruitment administrator. On December 17, 2015, he learned from HCA's Vice President of Labor Relations, Thomas Beck, that two women had filed sexual harassment complaints against him. Kilpatrick responded that he is gay and therefore would not have harassed the women. After the meeting, Beck purportedly told others in the office about Kilpatrick's sexual orientation. From that point on, Kilpatrick claims

he was treated differently. For example, co-workers apparently gifted Kilpatrick pink nail polish, a nail file, and bath bombs for Christmas, and a pair of pink sunglasses were later left on his desk. And on multiple occasions, another individual at the office—allegedly Kilpatrick's director—left notes on his desk containing Bible verses that he interpreted to mean he was going to hell for being gay. He also states that his workspace was moved, which isolated him from co-workers.

Shortly after Kilpatrick's meeting with Beck, HCA denied Kilpatrick's request for tuition reimbursement for graduate-school classes he took in the fall of 2015. Because HCA had approved his requests for such reimbursement in the past, Kilpatrick asked it to reconsider his latest request. In doing so, HCA also reviewed Kilpatrick's past requests and identified discrepancies in course dates and costs. To resolve those newly discovered inconsistencies, HCA requested additional information from Kilpatrick. HCA deemed his response inadequate—he allegedly submitted doctored and untimely information. As a result, HCA placed Kilpatrick on an "investigatory suspension," and around March 9, 2016, terminated his employment with the company. Kilpatrick believed his termination was discriminatory, so he filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 15, 2016.

Kilpatrick subsequently found work at Brookdale Senior Living as a corporate recruiter. Eight months later, Brookdale fired him, allegedly after it received an anonymous phone call disclosing that his employment dates at HCA did not match those on his Brookdale application. Believing that this second termination was also discriminatory, Kilpatrick filed a second Charge of Discrimination with the EEOC on February 16, 2017.

A month later, Kilpatrick filed this lawsuit in federal district court, asserting claims of discrimination and hostile work environment based on race and sex, retaliation, tortious

interference, and intentional infliction of emotional distress. HCA filed a motion for summary judgment, which the district court granted. Kilpatrick appealed.

II.

We review a district court's grant of summary judgment de novo. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Summary judgment is proper only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether that standard is satisfied, we view the evidence and draw all reasonable inferences in favor of the non-moving party. *Younis*, 610 F.3d at 361.

On appeal, Kilpatrick argues that the district court erred in granting summary judgment to HCA because: (1) his sex-based discrimination and hostile-work-environment claims are cognizable under Title VII; (2) HCA retaliated against him in violation of Title VII after he filed an EEOC charge; and (3) HCA's discriminatory conduct constituted intentional infliction of emotional distress.[1] We address each argument in turn.

*Sex-based Discrimination & Hostile Work Environment.* Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The district court held that Kilpatrick did not present a cognizable claim for sex-based discrimination or hostile work environment because both claims pertained only to his sexual orientation, which our then-relevant precedent had held was not a prohibited basis for discrimination under Title VII. About a year later, the Supreme Court held otherwise. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020). Kilpatrick's sex-based discrimination and hostile-work-environment claims relating to his sexual orientation are

---

[1] Kilpatrick also argues in his opening brief that the district court erred when it granted summary judgment to HCA on his tortious interference claim. But in his supplemental brief, he voluntarily abandons that claim, in addition to his race-based claims of discrimination and hostile work environment.

thus cognizable under Title VII.  *Id.*  We vacate the district court's judgment to the contrary and remand so it can address the merits of Kilpatrick's sex-based Title VII claims in the first instance.

*Retaliation.*  Title VII prohibits an employer from retaliating against an employee because of that individual's exercise of protected conduct.  42 U.S.C. § 2000e–3(a).  But prior to filing a claim of retaliation in federal court under Title VII, an employee typically must exhaust administrative remedies with the EEOC.  *See Younis*, 610 F.3d at 361.  HCA argues that Kilpatrick failed to do so here and that as a result, the district court had no subject matter jurisdiction to consider the merits of the claim.  But administrative exhaustion is not a jurisdictional requirement for a claim of retaliation under Title VII.  *E.g.*, *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019); *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013).  It is more like a mandatory claim-processing rule, subject to waiver or forfeiture if not properly raised.  *See George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020); *see also Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017).

HCA raised the issue at the district court and again on appeal.  So the rule is "properly invoked" and "must be enforced."  *See Hamer*, 138 S. Ct. at 17.  To satisfy the administrative exhaustion requirement under Title VII, an employee "must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts."  *Younis*, 610 F.3d at 361.  "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'"  *Id.* (quoting 29 C.F.R. § 1601.12(b)).  "The requirement, however, is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'"  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235

(6th Cir. 1980)). To that end, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

On appeal, Kilpatrick complains that HCA retaliated against him when it allegedly placed an anonymous call to his subsequent employer, Brookdale Senior Living, to point out suspected discrepancies in his work history which led to his termination from Brookdale. But Kilpatrick did not describe that complaint in the EEOC charge he filed on March 15, 2016. Nor could he have; he did not start working at Brookdale until May 2016, and the alleged call did not occur until sometime in or around January 2017. Nevertheless, Kilpatrick filed a second EEOC charge on February 16, 2017 which alleged a claim of retaliation against HCA and noted that he was "accused of false allegations" which led to his suspension and eventual termination from Brookdale. Granting Kilpatrick's second EEOC charge the liberal construction it is due, we hold that it satisfies Title VII's administrative exhaustion requirement and proceed to the merits.[2]

To establish a prima facie case of retaliation, Kilpatrick must establish that (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to HCA; (3) HCA took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008).

Kilpatrick fails to establish element four. As highlighted above, his retaliation claim is based on his allegation that sometime after filing his EEOC charge on March 15, 2016, an HCA representative called Brookdale and shared information about his HCA onboarding and

---

[2] HCA correctly points out that most of the information in Kilpatrick's February 2017 EEOC Charge pertains to Brookdale's alleged discriminatory conduct. Even so, Kilpatrick filed the Charge against HCA, and it can be construed to cover his retaliation claim now before us. *See Randolph*, 453 F.3d at 732.

termination dates, which resulted in his termination from Brookdale. But Kilpatrick admits that he does not know whether HCA actually called Brookdale, who from HCA might have called, or even what was discussed during the call. What's more, Kilpatrick does not point to any facts in the record substantiating his allegation that the call resulted in his termination from Brookdale. For those reasons, the district court granted summary judgment against him on this claim. We affirm that decision. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (opinion of Rogers, J.) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." (internal quotation marks and citation omitted)).

*Intentional Infliction of Emotional Distress.* To establish a prima facie case of intentional infliction of emotional distress under Tennessee law, Kilpatrick must demonstrate that (1) the conduct he complains of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct resulted in serious mental injury. *Fitzgerald v. Hickman Cnty. Gov't*, 2018 WL 1634111, at *14 (Tenn. Ct. App. Apr. 4, 2018) (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)).

Kilpatrick fails to establish element two. A plaintiff's burden to demonstrate outrageous conduct is not easy to meet. *Id.* "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)). Kilpatrick fails to allege facts beyond those supporting his claim of discrimination under Title VII. Without more, he cannot demonstrate outrageous conduct under Tennessee law. *See, e.g.*, *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003); *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 423 (6th Cir. 2020).

We vacate the district court's judgment regarding Kilpatrick's sex-based Title VII claims and remand for reconsideration in light of *Bostock*. As to the remaining claims on appeal, we affirm.